UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**CONCERNED HOME CARE PROVIDERS, INC.;
AMERICAN CHORE SERVICES, INC., D/B/A CITY
CHOICE HOME CARE SERVICES; COMMUNITY
HOME CARE REFERRAL SERVICE, INC.; EAGLE
HOME CARE, LLC; PELLA CARE, LLC; PLATINUM
HOME HEALTH CARE, INC.; ST. MARY'S
HEALTHCARE SYSTEM FOR CHILDREN,**

                              **Plaintiffs,**


        **-v-**                                    **1:12-CV-340 (NAM/CFH)**


**ANDREW M. CUOMO, in his capacity as the Governor of
the State of New York and NIRAV R. SHAH M.D., M.P.H.
in his capacity as the Commissioner of the New York State
Department of Health,**

                          **Defendants.**


✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Wilson Elser Moskowitz Edelman & Dicker LLP
Philip Rosenberg, Esq., of counsel
Benjamin F. Neidl, Esq., of counsel
677 Broadway - 9th Floor
Albany, New York 12207-2996
Attorneys for Plaintiffs

Hon. Eric T. Schneiderman, Attorney General of the State of New York
Krista A. Rock, Esq., Assistant New York State Attorney
The Capitol
Albany, New York 12224
Attorney for Defendants
New York State Attorney General - Albany Office
The Capitol
Albany, New York 12224
and
Seth Kupferberg, Esq., Assistant New York State Attorney
120 Broadway
New York, New York 10271
Attorneys for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Plaintiffs, an association of home care providers and six providers of home health care services, brought this action seeking a judgment declaring the invalidity of New York Public Health Law ("PHL") §3614-c, entitled "Home care worker wage parity" ("Wage Parity Law"), and a permanent injunction prohibiting defendants from enforcing the statute. Plaintiffs contend that the Wage Parity Law is impliedly preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, and expressly pre-empted by the pre-emption clause of section 514(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a). Plaintiffs further contend that the Wage Parity Law violates the Equal Protection and Due Process Clauses of the United States Constitution, and deprives them of their civil rights. *See* 42 U.S.C. § 1983. United States Magistrate Judge Christian F. Hummel "so ordered" a stipulation by plaintiff St. Mary's Healthcare System for Children to discontinue its claims without prejudice (Dkt. No. 24).

Presently before the Court is a motion (Dkt. No. 12) by defendants to dismiss the complaint for lack of subject-matter jurisdiction on the ground that plaintiffs lack standing, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim. Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the Court grants dismissal of all claims against Governor Andrew M. Cuomo; denies dismissal of the second cause of action (ERISA pre-emption) as against defendant New York State Commissioner of Public Health Nirav R. Shah, M.D., M.P.H.; declares that subdivision 4 of the Wage Parity Law is pre-empted by ERISA; severs subdivision 4 from the Wage Parity Law; upholds the remainder of the Wage Parity Law; and grants a permanent injunction enjoining Commissioner Shah from enforcing subdivision 4. In all other respects the Court grants

defendants' motion (Dkt. No. 12) to dismiss the complaint. Inasmuch as plaintiffs have received on this motion all the relief to which they are entitled in this action, the Court closes the case.

## BACKGROUND

In addition to the instant action challenging the Wage Parity Law, PHL § 3614-c, on federal law grounds, plaintiffs brought a combined Article 78 proceeding and declaratory judgment action in New York State Supreme Court challenging the law on a number of state law grounds. On September 7, 2012, Supreme Court Justice Roger D. McDonough granted defendants-respondents' motion for summary judgment, declared that the Wage Parity Law has not been shown to violate the New York State Constitution, denied all relief requested by plaintiffs-petitioners, and dismissed the action. *Concerned Home Care Providers, Inc. v. State of N.Y.*, Supreme Court, Albany County, Index No. 1145-12.[1] On July 3, 2013, the Appellate Division, Third Department, affirmed. *Matter of Concerned Home Care Providers, Inc. v. State of N.Y.*, 969 N.Y.S.2d 210, 215 (3d Dep't 2013).[2]

---

[1] Concerned Home Care Providers, Inc. also brought an action against New York State Department of Health and Governor Cuomo alleging that defendants violated the separation of powers by mandating and adopting regulations limiting the amount of State funds that could be used to pay for administrative expenses and executive compensation by entities that receive such funds to provide health care services. On July 10, 2013, New York State Supreme Court Justice Emily Pines denied a motion by Concerned Home Care Providers, Inc., for a preliminary injunction prohibiting the continued implementation of the Department of Health regulations. *Concerned Home Care Providers, Inc. v. New York State Dep't of Health*, 969 N.Y.S.2d 743 (N.Y.Sup.Ct. 2013). That case has no bearing on the issues in the case at bar.

[2] There is no merit to defendants' contention that, in view of the state court's dismissal of the equal protection and due process claims in the state court action, the doctrines of collateral estoppel and/or res judicata require this Court to dismiss such claims in the instant action. The equal protection and due process claims in the state court action were based on the New York State Constitution, whereas such claims in the instant action are based on the United States Constitution. In any event, district courts are not bound to adopt or follow a state court's interpretation of federal constitutional principles. *See Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 749 (2d Cir. 1981).

Under the Wage Parity Law, no payments by government agencies shall be made to a home health agency, long term home health care program, or managed care plan in New York City and the counties of Westchester, Suffolk and Nassau for care provided by a home care aide whose compensation is less than the total compensation required by the Wage Parity Law. PHL § 3614-c(2). The minimum rate of total compensation is based primarily on New York City's Living Wage Law. PHL § 3614-c(3); N.Y.C. Admin. Code §6-109. In the parallel state court action, the Third Department wrote: "By referring to the New York City statute, the Wage Parity Law aims to bring total compensation for Medicaid-reimbursed home care aides in the metropolitan New York area into line with compensation paid to aides who are under contract with New York City, thereby furthering the legislative purpose of stabilizing the workforce, reducing turnover, and enhancing recruitment and retention of home care workers." *Concerned Home Care*, 696 N.Y.S.2d at 213.

The pertinent portions of the Wage Parity Law, PHL § 3614-c, are as follows:

1. As used in this section, the following terms shall have the following meaning:

(a) "Living wage law" means any law enacted by Nassau, Suffolk or Westchester county or a city with a population of one million or more which establishes a minimum wage for some or all employees who perform work on contracts with such county or city.

(b) "Total compensation" means all wages and other direct compensation paid to or provided on behalf of the employee including, but not limited to, wages, health, education or pension benefits, supplements in lieu of benefits and compensated time off, except that it does not include employer taxes or employer portion of payments for statutory benefits, including but not limited to FICA, disability insurance, unemployment insurance and workers' compensation.

(c) "Prevailing rate of total compensation" means the average hourly

amount of total compensation paid to all home care aides covered by whatever collectively bargained agreement covers the greatest number of home care aides in a city with a population of one million or more. For purposes of this definition, any set of collectively bargained agreements in such city with substantially the same terms and conditions relating to total compensation shall be considered as a single collectively bargained agreement.

2. Notwithstanding any inconsistent provision of law, rule or regulation, no payments by government agencies shall be made to certified home health agencies, long term home health care programs or managed care plans for any episode of care furnished, in whole or in part, by any home care aide who is compensated at amounts less than the applicable minimum rate of home care aide total compensation established pursuant to this section.

3.     (a) The minimum rate of home care aide total compensation in a city with a population of one million or more shall be:

   ***

   (iii) for all periods on and after March first, two thousand fourteen, no less than the prevailing rate of total compensation as of January first, two thousand eleven, or the total compensation mandated by the living wage law of such city, whichever is greater.

(b) The minimum rate of home care aide total compensation in the counties of Nassau, Suffolk and Westchester shall be:

   ***

   (ii) for the period March first, two thousand fourteen through February twenty-eighth, two thousand fifteen, ninety-five percent of the total compensation mandated by the living wage law as set on March first, two thousand fourteen of a city with a population of a million or more;

   (iii) for the period March first, two thousand fifteen, through February twenty-eighth, two thousand sixteen, one hundred percent of the total compensation mandated by the living wage law as set on March first, two thousand fifteen of a city with a population of a million or more;

   (iv) for all periods on or after March first, two thousand sixteen, the lesser of (i) one hundred and fifteen percent of the total compensation mandated by the living wage law as set on March first of each succeeding year of a city with a population of one million or more or; (ii) the total compensation

mandated by the living wage law of Nassau, Suffolk or Westchester county, based on the location of the episode of care.

4. Any portion of the minimum rate of home care aide total compensation attributable to health benefit costs or payments in lieu of health benefits, and paid time off, as established pursuant to subdivision three of this section shall be superseded by the terms of any employer bona fide collective bargaining agreement in effect as of January first, two thousand eleven, or a successor to such agreement, which provides for home care aides' health benefits through payments to jointly administered labor-management funds.

5. The terms of this section shall apply equally to services provided by home care aides who work on episodes of care as direct employees of certified home health agencies, long term home health care programs, or managed care plans, or as employees of licensed home care services agencies, limited licensed home care services agencies, or under any other arrangement.
***
10. Nothing in this section should be construed as applicable to any service provided by certified home health agencies, long term home health care programs, or managed care plans except for all episodes of care reimbursed in whole or in part by the New York Medicaid program.
***

The complaint (Dkt. No. 1) characterizes the Wage Parity Law, N.Y. Public Health Law § 3614-c, as follows:

19. Effective March 1, 2012, the Wage Parity Law, codified at New York Public Health Law §3614-c, imposes new compensation mandates on home care agencies that directly or indirectly receive Medicaid funds and employ home care aides working in New York City and Nassau, Suffolk and Westchester Counties.

20. Instead of prescribing specific amounts as a compensation mandate, however, the Wage Parity Law provides, in part, that New York City shall dictate the mandate for the home health care agencies operating in New York City and Nassau, Suffolk and Westchester Counties.

21. Specifically, the Wage Parity Law incorporates by reference a New York City "living wage" law, N.Y.C. Admin. Code §6-109 (the "NYC Local Law"). The NYC Local Law provides that vendors performing work on city contracts must pay their employees compensation at specified rates.

22. The Wage Parity Law requires, as a condition of directly or indirectly receiving Medicaid funds, that home care agencies compensate their home care aides at rates that are based on a percentage of the NYC Local Law.

23. New York City is free to amend the NYC Local Law at any time and, by extension, unilaterally alter the responsibilities of home health care agencies not only operating in New York City, but also operating in Nassau, Suffolk and Westchester Counties.

24. Effective March 1, 2014, the Wage Parity Law also provides that covered home care agencies operating in New York City must pay their home care aides compensation no less than: (i) the rate prescribed in the NYC Local Law; or (ii) the average hourly amount of total compensation paid to all home care aides covered by whatever collectively bargained agreement covers the greatest number of home care aides in New York City. For purposes of determining the collectively bargained agreement with the largest number of home care aides, any set of collectively bargained agreements with substantially the same terms and conditions relating to total compensation shall be considered as a single collectively bargained agreement.

25. The collective bargaining agreement that covers the greatest number of home care aides in New York City, within the meaning of the Wage Parity, is the set of Home Attendant Agreements to which SEIU Local 1199 is a party, which cover about 40,000 home attendants working in New York City.

26. The Wage Parity Law also states that, effective March 1, 2016, home care agencies that operate in Nassau, Suffolk and Westchester Counties must compensate their home care aides the lower of 115% of the NYC Local Law or the amount that is mandated by a local law in Nassau, Suffolk or Westchester County, respectively.

In the first cause of action, plaintiffs claim that the Wage Parity Law is impliedly pre-empted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.* In the second cause of action, plaintiffs claim that the law is expressly pre-empted by section 514(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a). The third cause of action asserts that the Wage Parity Law denies plaintiffs equal protection in violation of the Fourteenth Amendment of the United States Constitution. The fourth cause of action asserts that the law violates plaintiffs' due process rights guaranteed by the United States Constitution. The

fifth cause of action, under 42 U.S.C. § 1983, alleges deprivation of federal statutory and constitutional rights. Finally, the sixth cause of action seeks a permanent injunction enjoining the state from enforcing the Wage Parity Law.

The complaint requests the following relief: a declaration that the Wage Parity Law is pre-empted by the NLRA; a declaration that the law is pre-empted by ERISA; a declaration that the law violates the equal protection guarantee of the United States Constitution; a declaration that the law violates the due process guarantee of the United States Constitution; and a permanent injunction prohibiting defendants from enforcing the Wage Parity Law.

**THE MOTION**

On this motion (Dkt. No. 12), defendants seek dismissal of the complaint on the following grounds: (1) plaintiffs lack standing; (2) the Court should abstain in light of the state court litigation; (3) Governor Andrew M. Cuomo is not a proper party; (4) the Wage Parity Law is not pre-empted by ERISA; (5) the Wage Parity Law is not pre-empted by the NLRA; (6) the Wage Parity Law does not deny plaintiffs equal protection; (7) the Wage Parity Law does not violate plaintiffs' rights to due process; and (8) even if the court upholds any cause of action in the complaint, plaintiffs should not be granted a permanent injunction.

Plaintiffs oppose defendants' motion in all respects. In addition, plaintiffs argue that, if the Court finds any aspect of the statute unconstitutional, plaintiffs are entitled to a permanent injunction.

As set forth below, the Court holds as follows: plaintiffs have adequately pleaded standing; abstention is not appropriate; Governor Andrew M. Cuomo is not a proper defendant; the Wage Parity Law is not pre-empted by the NLRA; the Wage Parity Law does not deprive

plaintiffs of equal protection or due process; and there is no basis for plaintiffs' cause of action under 42 U.S.C. § 1983. The Court further finds that, on its face, subdivision 4 of the Wage Parity Law is pre-empted by ERISA, and that on the face of the entire statute, subdivision 4 is severable. The parties have fully briefed the issues of ERISA pre-emption of subdivision 4, of subdivision 4's severability, and of the appropriateness of injunctive relief. Neither party requests discovery on any issue, nor do they argue that there are material questions of fact. There is no need to engage in further proceedings.

Accordingly, the Court denies dismissal of the second cause of action as against Commissioner Nirav R. Shah; declares that subdivision 4 is pre-empted by ERISA; severs subdivision 4 from the remainder of the Wage Parity Law; and grants a permanent injunction enjoining Commissioner Shah from enforcing subdivision 4. In all other respects the Court grants defendants' motion (Dkt. No. 12) to dismiss the complaint. Inasmuch as plaintiffs have received all the relief to which they are entitled, the Court closes the case.

## STANDING

As noted, one plaintiff, St. Mary's Healthcare System for Children, Inc., has discontinued its claims without prejudice (Dkt. No. 24). The remaining plaintiffs are five licensed home care services agencies ("LHCSAs"), which provide home health care, and an association of home care agencies, Concerned Home Care Providers, Inc. ("Concerned").

The Court first considers defendants' contention that plaintiffs lack standing, that is, that plaintiffs are not proper parties to request an adjudication of the particular issues raised in this action. *See Flast v. Cohen*, 392 U.S. 83, 99-100 (1968). The question of standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have

adjudicated." *Id.* at 99. The Supreme Court explains:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, alterations, and footnote omitted). A proper party is required "so that federal courts will not be asked to decide illdefined controversies over constitutional issues, or a case which is of a hypothetical or abstract character." *Flast*, 392 U.S. at 100 (internal quotation marks and citations omitted).

Defendants argue that the five plaintiffs which are LHCSAs do not plausibly plead an injury in fact. Defendants contend that, because LHCSAs do not directly receive government reimbursement, they are not directly affected – and therefore are not injured – by the Wage Parity Law. Defendants argue:

> The Wage Parity Law, which operates by prohibiting government agency payments to private agencies that fail to certify compliance with the statute, has no direct application to LHCSAs, such as these five Plaintiffs, which do not directly bill Medicaid in any event. The statute applies only to certified home health agencies ("CHHAs") as defined in PHL § 3602(8), long term home health care program providers ("LTHHCPs"), as defined in PHL § 3602(8), and managed care organizations ("MCOs"), as defined in PHL § 3614-c(1)(e) (collectively referred to as "Covered Organizations"). See PHL § 3614-c(2) and (6). While Covered Organizations which wish to be reimbursed by Medicaid and which elect to subcontract with LHCSAs are also compelled to "obtain a written certification from" the LHCSAs to be made available to the Department [of Health] on request, see 3614-c(7), the statute itself imposes no obligation on LHCSAs, nor can they be directly denied State Medicaid reimbursement for which they are by definition not eligible.

-10-

The Court rejects defendants' argument, and finds that the plaintiff LHCSAs have sufficiently pleaded that they are directly affected by the Wage Parity Law. Subdivision 5 of the Wage Parity Law provides that section 3614-c applies to LHCSAs as follows:

> 5. <u>The terms of this section shall apply equally to services provided by home care aides who work on episodes of care</u> as direct employees of certified home health agencies, long term home health care programs, or managed care plans, or <u>as employees of licensed home care services agencies,</u> limited licensed home care services agencies, or under any other arrangement.

PHL § 3614-c(5) (emphasis added). Subdivision 7 requires all LHCSAs subcontracting with a certified home health agency ("CCHA"), long term home health care program ("LTHHCP"), or managed care organization ("MCO") to provide to that organization a certification of compliance with the law. PHL § 3614-c(7). By operation of subdivisions 5 and 7, therefore, whenever a LHCSA subcontracts with a CCHA, LTHHCP, or MCO, the LHCSA must comply with the Wage Parity Law by paying its employees the wages mandated by that law.[3] Plainly, the plaintiff LHCSAs have plausibly claimed an injury in fact, a causal connection between the injury and the Wage Parity Law, and the likelihood that the injury will be redressed by a favorable decision. They have standing.

Regarding the standing of Concerned, the well-established test for "associational standing" is as follows:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

---

[3] In addition, all LHCSAs subcontracting with a CCHA, LTHHCP, or MCO must retain for 10 years the information necessary to verify compliance, and must make such information available to the Department of Health upon request. PHL § 3614-c(7).

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). As an association whose members are home care agencies covered by Article 36 of the N.Y. Public Health Law, of which section 3614-c is a part, Concerned Home Care Providers, Inc. also has standing.

## ABSTENTION

Defendants contend that this Court should abstain from exercising jurisdiction over this action pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-20 (1976). *Colorado River* held that a federal court may exercise its discretion to abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. *Id.* at 817. Generally, however, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (citations, alteration, and quotation marks omitted). The doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813 (citation and quotation marks omitted).

In evaluating whether to abstain under *Colorado River*, district courts consider the following six factors:

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100-01 (2d Cir. 2012) (citing *Woodford v. Community Action Agency of Greene Co., Inc.*, 239 F.3d

-12-

517, 522 (2d Cir. 2001)). The balance is "heavily weighted" in favor of the exercise of federal jurisdiction, and "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522.

Here, the Court resolves the *Colorado River* factors as follows. First, the controversy does not involve a *res*. Second, defendants do not argue that federal court is less convenient than state court. Third, at this point in the actions, there is no risk of piecemeal litigation or inconsistent results. Fourth, both cases are complete except for appeals. Fifth, federal law provides the rule of decision in the instant case. And sixth, inasmuch as the state court action does not involve the federal claims raised herein, that action is inadequate to protect plaintiffs' federal rights. The Court finds no basis to apply *Colorado River's* "extraordinary and narrow" exception to its duty to adjudicate this case. Abstention is denied.

## THE GOVERNOR AS DEFENDANT

Defendants argue that Governor Andrew M. Cuomo is not a proper party. The general authority of Governor of New York State to "take care that the laws are faithfully executed," N.Y. Const. art. 4, § 3, is not sufficient to make him a proper party in this action. *See Nolan v. Cuomo*, 2013 WL 168674, *9-10 (E.D.N.Y. Jan. 16, 2013); *Warden v. Pataki*, 35 F. Supp.2d 354, 359 (S.D.N.Y. 1999) (citing cases), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999); *Caprio v. New York State Dept. of Taxation and Fin.*, 955 N.Y.S.2d 734, 751 (N.Y.Sup.Ct. 2012). Plaintiffs have also named as a defendant the Commissioner of the New York State Department of Health, Nirav R. Shah M.D., M.P.H., in whom the responsibility for implementation and enforcement of the Wage Parity Law is vested. *See* PHL § 3614-c(2),(6)-(9). Commissioner Shah is the proper defendant, and all claims against Governor Andrew M. Cuomo are dismissed.

**PRE-EMPTION, GENERALLY**

The pre-emption doctrine is founded on the Supremacy Clause of the United States

Constitution, which states that "the Laws of the United States ... shall be the supreme Law of the

Land[,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

U.S. Const. art. VI, cl. 2.   The Second Circuit has stated: "[W]e agree with those commentators

who have concluded that ... 'the Supremacy Clause creates an implied right of action for

injunctive relief against state officers who are threatening to violate the federal Constitution or

laws.'"  *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1006 (2d

Cir. 1997) (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure:

Jurisdiction 2d § 3566, at 102 (1984); other citations omitted).

When applying the Supremacy Clause, a court should "start with the assumption that the

historic police powers of the States [are] not to be superseded by the Federal Act unless that was

the clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)

(citation and quotation marks omitted).   "In deciding whether a federal law pre-empts a state

statute, [the court's] task is to ascertain Congress intent in enacting the federal statute at issue.

Pre-emption may be either express or implied, and is compelled whether Congress' command is

explicitly stated in the statute's language or implicitly contained in its structure and purpose."

*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 738 (1985) (citations and internal

quotation marks omitted).

As with all other issues raised by defendants' motion for dismissal for failure to state a

claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the applicable standard is as

follows.  To survive such a motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor.  *See ATSI*, 493 F.3d at 98.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ERISA PRE-EMPTION

The Court turns to consider plaintiffs' claim that subdivision 4 of the Wage Parity Law is pre-empted by section 514(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a).  Subdivision 4 of the Wage Parity Law provides in full:

> Any portion of the minimum rate of home care aide total compensation attributable to health benefit costs or payments in lieu of health benefits, and paid time off, as established pursuant to subdivision three of this section shall be <u>superseded by the terms of any employer bona fide collective bargaining agreement</u> in effect as of January first, two thousand eleven, or a successor to such agreement, <u>which provides for home care aides' health benefits through payments to jointly administered labor-management funds</u>.

29 U.S.C. § 3614-c(4) (emphasis added).  Thus, on its face, subdivision 4 states that the health care benefits requirement of the Wage Parity Law is superseded by the terms of any qualifying collective bargaining agreement that provides for health care benefits through a specific type of employee benefit plan, *i.e.*, a jointly administered labor-management fund.  The parties agree that a "jointly administered labor-management fund" is known as a "Taft-Hartley" plan, and for

-15-

convenience the Court uses this term. It is undisputed that every Taft-Hartley plan is an ERISA plan. *See McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 18 (1st Cir. 1991).

The second cause of action of the complaint claims:

> 78. A jointly administered labor-management fund is a specific type of employee benefit plan, commonly known as a "Taft-Hartley" plan.
> 79. A Taft-Hartley plan is a multi-employer benefits plan. In general, multiple employers contribute to a fund to pay for the benefits. The fund is managed by a joint board of trustees equally representative of management and labor.
> 80. A Taft-Hartley plan that provides health care benefits is an "employee welfare benefit plan" within the meaning of ERISA. 29 U.S.C. §1002(l).
> 81. Therefore, the Wage Parity Law's exemption for employers who provide health benefits through a jointly administered labor-management fund gives special treatment to a single type of ERISA plan.
> 82. This state regulation of ERISA plans is prohibited and preempted by 29 U.S.C. §1144(a).
> 83. Accordingly, the Wage Parity Law is preempted by ERISA, and enforcement is barred by the Supremacy Clause of the United States Constitution.

It is undisputed that, as a result of subdivision 3's incorporation of the New York City Living Wage Law, the "total compensation" referred to in subdivision 4 must include either health benefits or a wage supplement in a specific amount. Plaintiffs' Memorandum of Law states:

> In general, the Wage Parity Law requires covered employers to provide health insurance benefits to home care workers, or pay a health wage supplement in lieu of health benefits. As interpreted and applied by the New York State Dep't of Health, the Wage Parity Law currently requires covered employers in New York City to provide health benefits or supplements with a value of at least $1.35 per hour. The requirement will expand to Westchester, Nassau and Suffolk counties next year, and the $1.35/hr. rate will increase over the next several years because the Wage Parity Law uses a graduated approach to increase compensation. Pub. Health L. § 3614-c(3).

> In subsection 4 of the statute, however, employers participating in Taft-Hartley plans are expressly exempt from the health benefit minimum.... That is, employers who participate in Taft-Hartley plans do not have to meet the

> $1.35/hr. minimum for health benefits and supplements. Employers participating in Taft-Hartley plans are deemed to be in compliance with the statute even if the health benefits they provide have a value lower than $1.35/hr. Every other covered employer must meet a $1.35/hr. threshold.

(Footnote and citation to record omitted.) Defendants dispute plaintiffs' assertion that "[e]mployers participating in Taft-Hartley plans are deemed to be in compliance with the statute even if the health benefits they provide have a value lower than $1.35/hr." Relying on Department of Health documents and New York City's Living Wage Law, defendants assert: "It is highly unlikely that any Taft-Hartley plan provides health benefits costing less than $1.35 per hour, but if one did, employers' credit could not exceed the actual cost." Defendants argue: "Since [subdivision] 3 makes the identical credit afforded by [subdivision] 4 to employers with Taft-Hartley plans available to all employers, the Wage Parity Law does not favor Taft-Hartley plans, and treats all employers equally." It is not necessary, however, for the Court to calculate and compare the practical effects of subdivisions 3 and 4, because, as explained below, the Court finds that subdivision 4 on its face relates to an ERISA plan and is thus pre-empted.

ERISA's pre-emption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter <u>relate to</u> any [covered] employee benefit plan[.]" ERISA § 514(a), 29 U.S.C. § 1144(a) (emphasis added). The "deliberately expansive" language of the pre-emption clause was "designed to establish pension plan regulation as exclusively a federal concern." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (citations and internal quotes omitted). The Supreme Court explains:

> The key to § 514(a) is found in the words "relate to." Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause applicable only to state laws relating to the specific subjects covered by ERISA. Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in

defining the "State law" that would be pre-empted....

A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this broad common-sense meaning, a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements.

*Id.* at 138-39 (emphasis added; citations and internal quotes omitted).

Regarding whether a state law has "reference to" an ERISA plan, the Supreme Court explains:

"[W]e have held pre-empted a law that "impos[ed] requirements by reference to [ERISA] covered programs," [*District of Columbia v.*] *Greater Washington Bd. of Trade*, [506 U.S. 125, 129, 113 S.Ct. 580, 583,] 121 L.Ed.2d 513 (1992); a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision, *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 828, n. 2, 829-830, 108 S.Ct. 2182, 2184, n. 2, 2185-2186, 100 L.Ed.2d 836 (1988); and a common-law cause of action premised on the existence of an ERISA plan, *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140, 111 S.Ct. 478, 483-484, 112 L.Ed.2d 474 (1990). Where a State's law acts immediately and exclusively upon ERISA plans, as in *Mackey*, or where the existence of ERISA plans is essential to the law's operation, as in *Greater Washington Bd. of Trade* and *Ingersoll-Rand*, that "reference" will result in pre-emption.

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 324-25 (1997). In *Mackey*, the Supreme Court held that a Georgia anti-garnishment statute "which singles out ERISA employee welfare benefit plans for different treatment under state garnishment procedures is pre-empted under § 514(a)." 486 U.S. at 830 (footnote omitted). The *Mackey* court noted that the statute "expressly refers to – indeed solely applies to – ERISA employee benefit plans" and thus is subject to "reference" pre-emption. *Id.* at 829; *see Hattem v. Schwartzenegger*, 449 F.3d 423, 433-34 (2d Cir. 2006) (discussing *Mackey*).

-18-

This Court determines that subdivision 4 of the Wage Parity Law has "reference to" an ERISA plan within the meaning of *Mackey*, because it "singles out" Taft-Hartley plans for "different treatment." 486 U.S. at 830. As does the statute struck down in *Mackey*, subdivision 4 "expressly refers to – indeed solely applies to – ERISA employee benefit plans." *Id.* at 829. There is no other reasonable reading of subdivision 4; on its face, it provides that the Wage Parity Law's health care benefits requirement is superseded by the terms of any qualifying collective bargaining agreement only where that agreement provides for health care benefits through a Taft-Hartley plan, which is undisputedly an ERISA plan. All other employers, whether they provide health benefits through another plan or simply pay a wage supplement, are subject to the minimum health care benefit requirement. Indeed, by exempting only those employers providing benefits through a Taft-Hartley plan, subdivision 4 goes farther than the statute struck down in *Mackey*; subdivision 4 does not merely single out ERISA plans in general, but rather "singles out" – and "solely applies to" – only one type of ERISA plan. Therefore, subdivision 4 is pre-empted by section 514(a) on the ground that it "relates to" an ERISA plan. 29 U.S.C. § 1144(a).

## NLRA PRE-EMPTION

The Court next addresses plaintiffs' contention that the Wage Parity Law as a whole is pre-empted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq*. Regarding NLRA pre-emption, the *Metropolitan Life* court explains:

> Unlike ERISA, the NLRA contains no statutory pre-emption provision. Still, as in any pre-emption analysis, the purpose of Congress is the ultimate touchstone. Where the pre-emptive effect of federal enactments is not explicit, courts sustain a local regulation unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.

-19-

471 U.S. at 747-48 (citations, alterations, and quotation marks omitted).

In contending that the entire Wage Parity Law is pre-empted by the NLRA, plaintiffs rely on *Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n* ("*Machinists*"), 427 U.S. 132 (1976). *Machinists* pre-emption prohibits State regulation of conduct that Congress intended to be unregulated and "controlled by the free play of economic forces." *Id*. at 140 (quoting *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971)). *Machinists* pre-emption is based on the premise that "'Congress struck a balance of protection, prohibition, and laissez-faire in respect to union organization, collective bargaining, and labor disputes.'" 427 U.S. at 140, n. 4 (quoting Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337, 1352 (1972)); *accord Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008).

Plaintiffs argue that the Wage Parity Law impairs collective bargaining "by removing a key term of employment – the rate of compensation – from the field of negotiation." Plaintiffs further argue:

> With the passage of the Wage Parity Law ... the State has settled employee compensation in favor of home care aides in New York City and Westchester, Nassau and Suffolk counties as a matter of legislative fiat rather than leaving it to the free play of economic forces. Covered employers are compelled to compensate home care aides well above minimum wage, under threat of being disqualified from receiving Medicaid reimbursements. Pub. Health L. §3614-c(2). Hamstrung by the statute's wage mandates, covered employers have less freedom – and less incentive – to offer vacation, health or pension benefits at the bargaining table in exchange for lower wages, because there is little room to trade on wages. Likewise, employees also have less room at the bargaining table to concede wages in order to extract paid time off, pension or other benefits from employers. The statute erodes the efficiency of collective bargaining as a vehicle for the covered labor factions to form the terms of their own relationships, which is precisely what Machinists preemption is supposed to prevent.

-20-

Plaintiffs' argument lacks merit. As the Second Circuit explains:

> [S]tate action is only preempted if it regulates the use of economic weapons that are recognized and protected under the NLRA such that the state or local government has entered "'into the substantive aspects of the bargaining process to an extent Congress has not countenanced.'" *Machinists*, 427 U.S. at 149, 96 S.Ct. 2548 (quoting *N.L.R.B. v. Insurance Agents' Int'l Union, AFL-CIO*, 361 U.S. 477, 498, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960)); *see also N.Y. Tel.*[*Co. v. New York State Dep't. of Labor*], 440 U.S. [519, 533, 99 S.Ct. 1328 (1979)]. There are two general exceptions to the *Machinists* doctrine: first, if the state regulation works to establish minimum substantive labor standards that are consistent with the legislative goals of the NLRA, *Metropolitan Life Ins.Co. v. Massachusetts*, 471 U.S. 724, 757, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and second, if the state is a market participant or proprietor, *Building & Const. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 227, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993).

*Rondout Elec., Inc. v. New York State Dept. of Labor*, 335 F.3d 162, 167 (2d Cir. 2003).

Regarding the first exception, which applies where the State law establishes "minimum substantive labor standards that are consistent with the legislative goals of the NLRA," *Metropolitan Life*, 471 U.S. at 757, the Second Circuit states:

> As the Supreme Court made clear in *Metropolitan Life*, "[t]he framework established in the NLRA was merely a means to allow the parties to reach ... agreement fairly." 471 U.S. at 754, 105 S.Ct. 2380. "The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." *Id.* at 753, 103 S.Ct. 2380. In *Metropolitan Life*, the Supreme Court held that "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." *Id.* at 755, 105 S.Ct. 2380. The Court found that such minimum labor standards have only "the most indirect effect on the right of self-organization established in the Act." *Id.* "Unlike the NLRA, mandated-benefit laws are not laws designed to encourage or discourage employees in the promotion of their interests collectively; rather, they are in part 'designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive' the mandated [benefit]." *Id.* (emphasis original,

internal citations omitted).  The Court found that these laws do not even "inadvertently affect the interests implicated in the NLRA." *Id.*

*Rondout*, 335 F.3d at 168.

The Court finds that the Wage Parity Law falls within the first exception to *Machinists* pre-emption, because it simply "works  to establish minimum substantive labor standards that are consistent with the legislative goals of the NLRA." *Id.* at 167 (citing *Metropolitan Life*, 471 U.S. at 757).  In giving specific minimum protections to individual workers, regardless of whether they are union or non-union employees, the Wage Parity Law "neither encourage[s] nor discourage[s] the collective-bargaining processes that are the subject of the NLRA." *Metropolitan Life*, 471 U.S. at 755.  The Court rejects plaintiffs' contention that, in settling the affected employees' compensation "as a matter of legislative fiat rather than leaving it to the free play of economic forces," the Wage Parity Law impairs collective bargaining.  In this respect, the Wage Parity Law is no different from any other state law that substantively regulates employment conditions.  As the Supreme Court has stated, "the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for there is nothing in the NLRA which expressly forecloses all state regulatory power with respect to those issues that may be the subject of collective bargaining." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21-22 (1987) (citations, alterations, and quotation marks omitted).  To the contrary, "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." *Id.* at 21.

The Court is not persuaded by plaintiffs' argument that "legislating discrete terms of employment of workers in a single industry in a limited geographical area offends the *Machinists* doctrine."  Plaintiffs rely on a Ninth Circuit case, *Chamber of Commerce v. Bragdon*, 64 F.3d

-22-

497, 501 (9th Cir. 1995), and a Seventh Circuit case, *520 S. Michigan Ave. Assocs v. Shannon*,

549 F.3d 1119, 1131 (7th Cir. 2008) (following *Bragdon*).  The Second Circuit has not adopted the

*Bragdon* rationale, *see Rondout*, 335 F.3d at 169 ("Having distinguished *Bragdon*, we have no

need to decide whether *Bragdon* was correctly decided on its own facts."), and the Ninth Circuit

significantly narrowed *Bragdon* in *Associated Builders and Contractors of S. Calif. v. Nunn*, 356

F.3d 979, 990 (9th Cir. 2004) ("The NLRA does not authorize us to pre-empt minimum labor

standards simply because they are applicable only to particular workers in a particular industry.").

To the extent that *Bragdon* and *Shannon* may support plaintiffs' position, the Court declines to

follow their reasoning, and instead follows the reasoning of the Second Circuit in *Rondout*.  The

Wage Parity Law, like the mandated-benefit laws discussed in *Rondout*, 335 F.3d at 167-70,

avoids *Machinists* pre-emption because it does not affect the bargaining process itself, but rather

falls within the traditional police power of the state to establish labor standards.  For the same

reason, the Court rejects plaintiffs' other arguments on this issue.  In enacting the Wage Parity

Law, the State has not "entered into the substantive aspects of the bargaining process to an extent

Congress has not countenanced."  *Machinists*, 427 U.S. at 149 (citation, alteration, and quotation

marks omitted).  The first cause of action is dismissed.

**EQUAL PROTECTION**

The third cause of action claims that the Wage Parity Law violates the Equal Protection

Clause of the United States Constitution.  The complaint states as follows:

> 86. The Wage Parity Law affords differing rights and protections to persons
> who are similarly situated in a manner that is not narrowly tailored to serve
> compelling government interest. The Wage Parity Law's disparate treatment
> of similarly situated persons is also not reasonably related to any legitimate
> government interest.
> 87. The Wage Parity Law affords greater rights and protections to the citizens

-23-

of New York City than it does to the citizenry of Nassau, Suffolk and Westchester Counties. As discussed above, the Wage Parity Law incorporates the NYC Local Law as it exists now and as it may exist in the future. The Wage Parity Law uses the compensation prescribed in the NYC Local Law as the benchmark for establishing minimum home care aide compensation in all four of the covered regions.

88. The Wage Parity Law effectively preempts Nassau, Suffolk and Westchester Counties from enacting (or declining to enact) local legislation of their own regulating compensation rates for home care workers.

89. As a result, those persons affected by, and who have an interest in, home care services in New York City have the opportunity to partake in the democratic process with respect to the minimum compensation paid to home care aides.

90. Persons affected by, and who have an interest in, health care services in Nassau, Suffolk and Westchester Counties have no representation in New York City. Accordingly, those persons are denied the opportunity to partake in the democratic process enjoyed by persons in New York City.

91. The right to representation is a fundamental right. State action that denies a class of individuals the right to political representation is unconstitutional unless it is narrowly tailored to serve a compelling government interest.

92. The Wage Parity Act's disparate treatment of affected persons in Nassau, Suffolk and Westchester Counties is not narrowly tailored to serve a compelling government interest.

93. In the alternative, the disparate treatment is not rationally related to any legitimate government interest.

94. Therefore, the Wage Parity Law is a plain violation of the Fourteenth Amendment to the United States Constitution. Enforcement of the statute would be an unlawful deprivation of the constitutional rights of the plaintiffs.

In moving to dismiss plaintiffs' equal protection claim, defendants point out that "[w]hen economic legislation does not employ classifications subject to heightened scrutiny or impinge on fundamental rights, courts generally view constitutional challenges with the skepticism due respect for legislative choices demands." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, __, 130 S.Ct. 2323, 2333 (2010) (footnote omitted). As the Supreme Court explains:

[E]conomic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose. Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and

-24-

irrationality. ... [E]conomic legislation is valid unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that a court can only conclude that the legislature's actions were irrational. This is a heavy burden[.]

*Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981) (citations, alterations, and quotation marks omitted).  Regarding the rational basis standard, the Second Circuit observes that an equal protection challenge to state law "will be rejected as long as the classification therein 'rationally further[s] a legitimate state interest.'"  *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001) (quoting  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  The Second Circuit continues:

Rational basis review is deferential. Rational basis review does not pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are plausible reasons for Congress's choices.  Moreover, an equal protection challenge to a government classification must be denied if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Id.* (citations and quotation marks omitted).

In the "Declaration of legislative findings and intent," the State Legislature sets forth its purpose in enacting article 36 of the Public Health Law, "Home Care Services," of which the Wage Parity Law is a part:

The legislature hereby finds and declares that the provision of high quality home care services to residents of New York state is a priority concern. Expanding these services to make them available throughout the state as a viable part of the health care system and as an alternative to institutional care should be a primary focus of the state's actions.
***
The legislature intends that there be a public commitment to the appropriate provision and expansion of services rendered to the residents of the state by certified home health agencies, to the maintenance of a consistently high level of services by all home care services agencies, to the central collection and public accessibility of information concerning all organized home care services, and to the adequate regulation and coordination of existing home care services.

-25-

PHL § 3600.

Specifically regarding the legislative purpose in enacting section 3614-c, the Third

Department states in the state action parallel to the instant action:

> By referring to the New York City statute, the Wage Parity Law aims to bring
> total compensation for Medicaid-reimbursed home care aides in the
> metropolitan New York area into line with compensation paid to aides who
> are under contract with New York City, thereby furthering the legislative
> purpose of stabilizing the workforce, reducing turnover, and enhancing
> recruitment and retention of home care workers.
> ***
> [B]ecause the decision to condition Medicaid reimbursement on a minimum
> wage that is determined by reference to the New York City minimum wage
> is rationally related to the legislative purpose, petitioners' equal protection
> argument is likewise without merit.

*Concerned Home Care*, 969 N.Y.S.2d at 213, 214.

Although there is no formal statement by the New York State Legislature of its purpose in

enacting section 3614-c, it is clear from its provisions – and its title, "Home care worker wage

parity" – that its goal is to bring "total compensation for Medicaid-reimbursed home care aides in

the metropolitan New York area into line with compensation paid to aides who are under contract

with New York City[.]" *Id.* It is further evident that this goal is rationally related to the

legislative purpose of article 36 of New York's Public Health Law to promote "the appropriate

provision and expansion of services rendered to the residents of the state by certified home health

agencies [and] to the maintenance of a consistently high level of services by all home care

services agencies[.]" PHL § 3600.

In opposition to the dismissal motion, plaintiffs argue that "there are any number of ways

the Legislature could have sought to increase home care aide compensation in Westchester,

Nassau and Suffolk Counties, and it certainly could have accomplished that goal without

-26-

subverting rates of home care compensation in those counties to the will of the New York City Council."  Plaintiffs continue: "Defendants have not offered any reason – much less a rational one – why the New York City local government is an appropriate body to dictate minimum compensation levels for home health agencies operating outside of the City's borders."  Plaintiffs' argument is, in essence, a challenge to "the wisdom, fairness, or logic of [a] legislative decision[]," *Weinstein*, 261 F.3d at 140; plaintiffs do not, however, show that there is no "reasonably conceivable state of facts that could provide a rational basis for" section 3416-c.  *Id.*

Plaintiffs' primary equal protection argument is not based on the rational basis standard, however; rather, plaintiffs contend that the Wage Parity Law should be subject to strict scrutiny, on the ground that it impedes plaintiffs' fundamental right to political representation.  Plaintiffs state that the Wage Parity Law "accomplishes its objectives by appropriating the standards of one local government (New York City) and applying those standards to several others (Westchester, Suffolk and Nassau Counties)."  They add: "By using this methodology, Defendants have in effect given the elective representatives of New York City say over matters impacting home care agencies providing services in Nassau, Suffolk and Westchester Counties."  The Court rejects this argument.  Plaintiffs, as artificial entities, are not injured by any alleged abridgement of the rights of voters in Nassau, Suffolk and Westchester Counties, of the counties themselves, or of any "[p]ersons affected by, and who have an interest in, health care services in Nassau, Suffolk and Westchester Counties," as alleged in the complaint.[4]  Plaintiffs do not allege facts supporting a plausible claim that the Wage Parity Law infringes a fundamental right enjoyed by plaintiffs.

---

[4] Plaintiffs do not claim that their right to petition legislative and administrative bodies, *see Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 355, 130 S.Ct. 876, 907 (2010), is impeded by the Wage Parity Law.

Accordingly, the third cause of action based on the Equal Protection Clause of the United States Constitution is dismissed.

## DUE PROCESS

In their fourth cause of action, plaintiffs allege a deprivation of property without due process of law. The complaint states:

> 98. The State may not delegate its authority to private actors unless the State proscribes [*sic*] clear standards to guide the conduct of said private actors, and the State exercises a reasonable degree of oversight of the private actor's conduct.

> 99. Plaintiffs have a real and concrete property interest in the revenues generated by their business. The Wage Parity Law, if enforced, will impair that property interest, by requiring the home care agencies to pay a greater portion of those revenues to home care workers in New York City and Nassau, Suffolk and Westchester Counties.

> 100. Plaintiffs have a real and concrete property interest in Medicaid reimbursements for covered care services that they provide. The Wage Parity Law, if enforced, will impair that property interest, by denying Medicaid reimbursements to those home care agencies that are unable to pay the increased compensation required by the Wage Parity Law.

> 101. The Wage Parity Law improperly delegates discretion to private actors to determine minimum rates of home care aide compensation for New York City as of March 1, 2014 and beyond.

Defendants argue that as a matter of law plaintiffs have failed to allege facts which, if true, would state a plausible due process claim, because plaintiffs have failed to allege a cognizable property interest. The Court agrees. It is well established that "[g]overnmental action may be challenged as a violation of due process only when it may be shown that it deprives a litigant of a property or a liberty interest." *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991) (citation omitted). "Such property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source

-28-

such as state law." *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir.1995) (citation and quotation marks omitted).

The complaint asserts that plaintiffs have a "property interest in Medicaid reimbursements for covered care services" and that the Wage Parity Law will impair that interest by "denying Medicaid reimbursements to those home care agencies that are unable to pay the increased compensation required by the Wage Parity Law." As LHCSAs, however, plaintiffs do not receive Medicaid reimbursements.[5] Therefore, they have no cognizable property interest in such reimbursements.

The complaint further alleges that plaintiffs have a "property interest in the revenues generated by their business" and that enforcement of the Wage Parity Law "will impair that property interest, by requiring the home care agencies to pay a greater portion of those revenues to home care workers[.]" These allegations, if true, do not establish a protectible property interest. Apparently in response to authority holding that there is no due process interest in the future prospect of maintaining a business or earning a profit, *see, e.g., College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 673-75 (1999); *Evac LLC v. Pataki*, 89 F.Supp.2d 250, 257-58 (N.D.N.Y. 2000), plaintiffs cite *Vermont Right to Life Comm., Inc. v. Sorrell* for the following proposition: "A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it." 221 F.3d 376, 382 (2d Cir. 2000) (citation and quotation marks omitted). The

---

[5] Rather, as discussed above in the context of the issue of plaintiffs' standing, when a LHCSA subcontracts with a CCHA, LTHHCP, or MCO, the LHCSA is required by operation of subdivisions 5 and 7 of PHL § 3614-c to comply with the Wage Parity Law by paying its employees the wages mandated by that law.

decision in *Vermont Right to Life* does not, however, concern the existence of a property interest protectible by due process; rather, the quoted language concerns standing and is inapplicable here. Plaintiffs' asserted interest in not having future revenues diminished by a requirement that it pay higher wages to workers on covered contracts does not support a due process claim.

Finally, plaintiffs contend that the Wage Parity Law denies them due process because it "improperly delegates discretion to private actors to determine minimum rates of home care aide compensation." According to plaintiffs, "although the existence of a sufficiently tangible 'property interest' is an element in most types of Due Process claims, the cases in this particular 'delegation' case line do not include that element[.]" Plaintiffs continue: "The injury in the 'delegation' cases is not the loss of property *per se*; rather the injury is having to comply with arbitrary standards devised by private actors instead of duly elected or appointed public officials who are presumed to be acting in the public interest." This argument finds no support in the case law; indeed, the cases relied on by plaintiffs plainly concern the impairment of a cognizable property interest. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 310-11 (1936) (delegation to majority of coal producers and miners the authority effectively to regulate business affairs of minority of coal producers and miners deprives minority of due process); *General Elec.*, 936 F.2d at 1453-54 (holding that plaintiff, which had already performed the work, has "a right to timely payment for work it performs under a contract with a state agency, and that such right is a property interest protected by the due process clause."); *Beary Landscaping, Inc. v. Shannon*, 2011 WL 1100213, *4 (N.D.Ill. Mar. 22, 2011) (holding that the "substantial monetary sums" the Illinois Department of Labor sought to recover from plaintiffs employers, representing the difference between the prevailing wage and the lower rate plaintiffs actually paid their employees,

plus underpayment penalties, are "sufficient property interests to satisfy the first step of the due process analysis."), *aff'd sub nom. Beary Landscaping, Inc. v. Costigan*, 667 F.3d 947 (7th Cir. 2012).

Plaintiffs' due process claim lacks merit. The fourth cause of action is dismissed.

### 42 U.S.C. § 1983

Plaintiffs bring the fifth cause of action under 42 U.S.C. § 1983 ("section 1983"), which establishes a cause of action against a person who, under color of law, deprives a party of "any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." The complaint alleges:

> 108. Governor Cuomo and Commissioner Shah are enforcing, or imminently will enforce, the Wage Parity Law.
> 109. Governor Cuomo and Commissioner Shah's actions in enforcing the Wage Parity Law are taken, and will be taken, under color of state law.
> 110. Governor Cuomo and Commissioner Shah's enforcement of the Wage Parity Law will deprive the Plaintiffs of rights, privileges or immunities guaranteed by the United States Constitution and federal law.
> 111. As noted, enforcement of the Wage Parity Law will deprive the Plaintiffs of equal protection under the law, guaranteed by the Fourteenth Amendment to the United States Constitution.
> 112. As noted, enforcement of the Wage Parity Law will deprive the Plaintiffs of due process guaranteed by the Fourteenth Amendment to the United States Constitution.
> 113. As noted, the enforcement of the Wage Parity Law will deprive the Plaintiffs of rights protected by the NLRA.
> 114. As noted, the enforcement of the Wage Parity Law will deprive the Plaintiffs of rights protected by ERISA.
> 115. Enforcement of the Wage Parity Law will cause the Plaintiffs real and substantial injury on a prospective basis.

Plaintiffs do not seek money damages; rather, they seek only injunctive and declaratory relief.

Section 1983 does not create enforceable rights; rather, it provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (citation

omitted).  Here, the Court has dismissed plaintiffs' claims that the Wage Parity Law is pre-empted by the NLRA and that defendants deprived them of their rights under the Equal Protection and Due Process Clauses of the United States Constitution; therefore, these claims cannot support a section 1983 cause of action.  As for whether the sole viable claim in the instant complaint, *i.e.*, the second cause of action claiming that the Wage Parity Law is pre-empted by ERISA, would support a section 1983 cause of action, the Court observes that the Supremacy Clause does not itself create rights enforceable under section 1983.  *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107-08 (1989) ("Given the variety of situations in which preemption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority.").  Rather, "the availability of the § 1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations sufficiently specific and definite to be within the competence of the judiciary to enforce, is intended to benefit the putative plaintiff, and is not foreclosed by express provision or other specific evidence from the statute itself."  *Id*. at 108 (citations and quotation marks omitted).  There is no basis to find that plaintiffs are intended beneficiaries of ERISA's pre-emption clause such that they have "rights" which may be vindicated via section 1983 in the context of the instant case.  The fifth cause of action is dismissed.

## SEVERABILITY

Having found that subdivision 4 of the Wage Parity Law, PHL § 3416-c(4), is pre-empted pursuant to section 514(a) of ERISA, 29 U.S.C. § 1144, the Court must determine whether subdivision 4 is severable from the remainder of the Wage Parity Law, which the Court upholds.

As explained below, the Court finds that it is severable.

"Severability is a question of state law." *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 60 (2d Cir.1988) (citing *Watson v. Buck*, 313 U.S. 387, 395-96 (1941)). New York's test for severability is "whether the Legislature would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether." *Greater N.Y. Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 110 (2d Cir. 1999) (quoting *In re New York State Superfund Coal., Inc. v. New York State Dep't of Envtl. Conservation*, 75 N.Y.2d 88, 94 (1989) (citation and internal quote omitted)), *abrogated on other grounds, Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001).

It is evident that the New York State Legislature would have wished the Wage Parity Law to be upheld despite the invalidity of subdivision 4. Removal of subdivision 4 does not impair the Wage Parity Law's purpose – which is obvious on its face – to "bring total compensation for Medicaid-reimbursed home care aides in the metropolitan New York area into line with compensation paid to aides who are under contract with New York City[.]" *Concerned Home Care*, 969 N.Y.S.2d at 213. Indeed, inasmuch as subdivision 4 exempts certain employers from the health care benefits requirement of the Wage Parity Law, the invalidation of subdivision 4 effectively extends the statute's reach. Section 3614-c plainly "stands alone" despite the excision of subdivision 4.

In addition, the Legislature's intent regarding severability of subdivision 4 is shown by the enactment of severability clauses applicable to the Wage Parity Law and, more generally, to Article 36 of the Public Health Law, of which the Wage Parity Law is a part. The Wage Parity Law was enacted as section 33 of Part H of chapter 59 of the 2011 Session Laws of New York

-33-

State.  Section 110 of Part H sets forth the following severability clause:

> If any clause, sentence, paragraph, subdivision, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, subdivision, section or part thereof directly involved in the controversy in which such judgment shall have been rendered. It is hereby declared to be the intent of the legislature that this act would have been enacted even if such invalid provisions had not been included herein.

McKinney's Sess. Laws of 2011, ch. 59, § 110.  Viewing the severability clause of section 110 of Part H in the context of Chapter 59 as a whole, the Court concludes that it was intended to apply to all of the sections in Part H, including the Wage Parity Law.  Further, as defendants point out, the Public Health Law contains the following clause applicable to Article 36 in its entirety: "If any clause, sentence, paragraph, subdivision, section or part of this article shall be adjudged by any court of competent jurisdiction to be invalid, the judgment shall not affect, impair, or invalidate the remainder thereof."  PHL § 3622.  Therefore, although subdivision 4 of section 3614-c of the Public Health Law is pre-empted by ERISA, the remaining provisions of section 3614-c are valid and enforceable.

### CONCLUSION

In sum, the Court holds as follows: plaintiffs have adequately pleaded standing; abstention is not appropriate; Governor Andrew M. Cuomo is not a proper defendant; the Wage Parity Law is not pre-empted by the NLRA; the Wage Parity Law does not deny plaintiffs equal protection or due process; and there is no basis for plaintiffs' cause of action under 42 U.S.C. § 1983.  The Court further finds that, on its face, subdivision 4 of the Wage Parity Law is pre-empted by ERISA, and that on the face of the Wage Parity Law, subdivision 4 is severable.  The parties have fully briefed the issues of ERISA pre-emption of subdivision 4, of subdivision 4's severability,

and of the appropriateness of injunctive relief. Neither party requests discovery on any issue, nor do they argue that there are material questions of fact. There is no need for further proceedings. It is therefore

ORDERED that all claims against defendant Andrew M. Cuomo, Governor of the State of New York, are dismissed; and it is further

ORDERED that the relief requested in the second cause of action of the complaint is granted to the extent that the Court declares that subdivision 4 of the Wage Parity Law, N.Y. Public Health Law § 3614-c, is invalid as pre-empted by ERISA, and that N.Y. Public Health Law § 3614-c is otherwise valid; and it is further

ORDERED that as to defendant Nirav R. Shah M.D., M.P.H., Commissioner of the New York State Department of Health, dismissal of the second cause of action is denied; and it is further

ORDERED that defendant Commissioner Nirav R. Shah is permanently enjoined from enforcing subdivision 4 of N.Y. Public Health Law § 3614-c; and it is further

ORDERED that in all other respects defendants' motion (Dkt. No. 12) to dismiss the complaint is granted; and it is further

ORDERED that, plaintiffs having received all the relief to which they are entitled in this action, the case is closed.

IT IS SO ORDERED.

Date:   September 24, 2013
           Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge